JOHN MORGAN *v.* JEFFIE E. DAVIS.

Tax Title — Levy of County Taxes — Adjourned Meeting.
> A sale of land for taxes is void when the levy of the county tax was made at an adjourned meeting of the board of supervisors.[1]

Same — Sale Made May 10, 1875 — Abatement Act.
> A sale of land for taxes, made on the 10th day of May, 1875, confers no title when it is not shown that the land was of the class of lands to be dealt with under the "Abatement Act" of 1875.[2]

Bill in chancery, by Jeffie E. Davis, against John Morgan, to set aside and cancel a tax title held by defendant to certain lands described in the bill. From a decree for complainant, defendant appeals.

The complainant, Jeffie E. Davis, owned the land in controversy, and it was sold by the sheriff of Chickasaw county on the

---

[1]

A sale of land for a county tax, levied at a special meeting of the board of police, called without notice, as required by law (H. C. 710, § 15), is void. The meeting of the board, without such notice, is unauthorized by law, and its action is not binding. Jones *v.* Burford, 4 C. 194.

Under the Code of 1871, the board of supervisors has no authority to hold an adjourned meeting at a time not appointed by law, and any action taken at such meeting is void. Smith *v.* Nelson, 57 Miss. 138; Wolfe *v.* Murphy, 60 Miss. 1.

A meeting of the board of supervisors, held in the office of the chancery clerk, in a building one hundred feet from the court-house, is not "at the court-house" within the meaning of section 278, Code 1892, requiring such meetings to be at the court-house, and this, though such building is owned and used by the county for offices for the chancery and circuit clerks and sheriff, and for a jail, and adjoins the court-house yard, a gate of which is only twenty feet from the door of said office. Harris *v.* State, 72 Miss. 960; 18 So. 387.

And when the board of supervisors meets at such office, and there acts on a petition for a local option election, its order thereon, and an election held pursuant thereto, are void. Harris *v.* State, 72 Miss. 960; 18 So. 387.

Section 1372, Code 1871, requiring the levy of county taxes to be made on the first Monday of July, and section 1373, providing for a special meeting for that purpose, if the levy be not made, must be conformed to by the board of supervisors. If, after having met at the regular term and levied certain taxes, it has a special meeting and levies other taxes, the levy made

1st day of February, 1875, for the taxes of 1874, and knocked off to the State. It was again sold to the State on the 10th day of May, 1875, and on the 28th day of November, 1877, the State sold it to appellant, Morgan.

Complainant introduced the minutes of the board of supervisors, which showed that the county taxes were levied at an adjourned meeting of the board on the 13th day of July, 1874.

at the special meeting is void, because made at a time not authorized by law. Gamble v. Witty, 55 Miss. 26.

Section 2154, Code 1880, providing that the board of supervisors failing to levy county taxes at the time fixed by law, may do so at a special meeting called for that purpose, is not a requirement that under such circumstances the levy can be made only at a special meeting, but as a promt remedy for neglect of duty, and the levy may be made at the first meeting, whether regular or special, after the omission. Beck v. Allen, 58 Miss. 143.

Under sections 1353, 1372, 1373, Code 1871, the time of the meeting of the board of supervisors is fixed by law. There are regular and special meetings, but no adjourned meetings, and a levy of taxes made at an adjourned meeting is void and a sale therefore passes no title. Smith v. Nelson, 57 Miss. 138.

Where a lawful levy of taxes was made at the proper time, and afterwards, at a meeting of the board of supervisors, held at an improper time, an order is made purporting to reduce the levy, one whose land is sold for taxes cannot complain of the illegality of the last order. McCready v. Lansdale, 58 Miss. 877; Havard v. Day, 62 Miss. 748.

Under the Act of 1876 (Laws, p. 257), authorizing the board of supervisors to order new assessments of land where deemed necessary, a levy of taxes on the first Monday of September, 1886, is void, it being required by that act, and by the Act of 1875, herein referred to, as under section 1372, Code 1871, that the board, having ordered such assessment should meet on the first Monday in July and receive, equalize, and approve the assessment roll, and levy the taxes. Harris v. Stockett, 58 Miss. 825.

Such levy is not protected by section 1687, Code 1871, since it does not appear that any other person than the regular assessor was appointed to make the assessement; and because the assessment is exceptional in character and is governed by the provision of the special law authorizing it. Ib. See also Stovall v. Connor, 58 Miss. 138.

Where taxes are levied at a special meeting of the board of supervisors, in the absence of evidence to the contrary, it will be presumed that the meeting was properly held, such meetings being authorized. Briggins v. Chandler, 60 Miss. 862.

A levy of taxes made by a board of supervisors at a place where it is not authorized to hold its sessions is void, and a sale thereunder confers no title. Johnson v. Futch, 57 Miss. 73; Bank v. Lewis, 64 Miss. 727; 2 So. 243.

The levy of taxes for Hinds county for 1875 was void because not made

APPEALED from Chancery Court, Chickasaw county, first district, L. HAUGHTON, Chancellor.

Affirmed, February 19, 1883.

*Attorneys for appellant, R. Davis, and A. Y. Harper.*

*Attorneys for appellee, Martin & Bates.*

Brief of R. Davis:

\* \* \* The assessment, under which this sale was had, was made in the spring of the year 1871, and by section 1684, Code of 1871, was required to be completed and certified with an affidavit appended and *delivered* to the *clerk* of the board of supervisors in his county, on or before the first Monday in July in each

at the courthouse, but at a place in the first judicial district of the county, where the board of supervisors was not authorized by law to hold sessions. Johnson *v.* Futch, 57 Miss. 73.

Under Code 1871, section 1353, prescribing that the regular meetings of the boards of supervisors shall be on the first Monday in January, March, July, and October, and limiting the sessions of such meetings to four days, and no longer, the approval and acceptance of a land-roll, and a tax-levy made by such board, three days after the expiration of the period prescribed, no special meeting having been called, are unauthorized and void. Tierney *v.* Brown, 67 Miss. 109; 6 So. 737.

An order of the board of supervisors, made in another place than in the courthouse, without legal excuse, is void. State *v.* Harris, 18 So. 123.

"The boards of supervisors of the several counties shall meet on the first Monday of July in each year, for the purpose of fixing the amount of county taxes for the current fiscal year, and shall then order a certain rate per centum on the amount of the assessment roll for State taxes, to be collected for county taxes; and the clerk of the board shall thereupon certify the same to the auditor of public accounts and sheriff of the county, as directed by law." Code of 1871, § 1372.

"If the board shall fail to meet on the first Monday in July, the president, or any two members of the board, may call a meeting for the purpose of levying the county taxes, at some convenient time, as early as practicable giving the notice requisite for calling a special meeting of the board." Code of 1871, § 1373.

"The boards of supervisors of the several counties shall, on or before the first Monday of September in each year, fix the amount of county taxes for the current fiscal year, and shall order a certain rate per centum on the amount of the assessment roll for State taxes, to be collected for county taxes; and the clerk of the board shall thereupon immediately certify the

year, where it shall remain until the first Monday of August next thereafter; objections, if any, to be filed in the meantime.

Section 1685 requires the board of supervisors to meet on the first Monday in August, 1871, to hear objections, etc.

Now, it is objected that the assessor of Chickasaw county did not complete, certify, and swear to, and return his assessment rolls to the clerk on or before the first Monday in July, and that the assessment is therefore invalidated, and insufficient to confer power to sell land. This objection was considered by this court in the case of Wolfe v. Murphey (not reported), and disposed of, contrary to objection. But if it had not been, section 1687 of the Code of 1871 has provided for it. The return was to be made to

same to the auditor of public accounts and tax-collector of the county." Code of 1880, § 2153.

"If the board shall fail to make the order for county taxes, as above, the president or any member of the board, may call a meeting for the purpose of levying the county taxes, at some convenient time, as early as practicable, giving the notice requisite for calling a special meeting of the board." Code of 1880, § 2154.

The boards of supervisors shall hold regular meetings on the Monday preceding each term of the Circuit Court of each county, and may continue in session four days, and no longer. They shall also hold meetings at such other times as may be required by law, and the president, or any two members of the board may call special meetings when deemed necessary." * * * Code of 1880, § 2135.

"The board of supervisors shall hold regular meetings at the courthouse of their respective counties on the first Monday of each month. At the meetings for the transaction of business under the revenue law, they may continue in session as long as business may require; but at the other regular meetings they shall not continue in session longer than four days." Code of 1892, § 278.

"The board may, at a regular meeting, by an order on its minutes, adjourn to meet at any time it may determine upon; and the president, or any three members of the board, may call special meetings when deemed necessary." Code of 1892, § 280; Code of 1906, § 298.

"The board of supervisors of each county shall, at its regular meeting in September of each year, levy the county taxes for the succeeding fiscal year, and shall order a certain rate per centum on the amount of the State tax upon the assessment rolls, to be collected for county taxes; but if the board of supervisors of any county shall not levy the county taxes at that time, the board may levy the same at any other regular, adjourned, or special meeting." Code of 1892, § 314; Code of 1906, § 335.

"The board of supervisors shall hold regular meetings at the courthouse or in the chancery clerk's office, in counties where the chancery clerk's office is

Points of Counsel.

the clerk, and not the board. The board was required to meet the first Monday of August, and act upon the objections. If at that term the court should find that the assessment roll had not been made, they would appoint some one and fix the first Monday in September next thereafter, and consider and approve, etc.

The record shows that the assessor of Chickasaw county did not make his return until Tuesday, the 8th of August, the second day of the board, and that the board received it instead of appointing some one to make assessment. This they certainly had the power to do. This was certainly a sufficient compliance with the statute. Receiving the report of the roll, as the board did, under the authority of this section 1687, they had the power to fix a

in a building separate from the courthouse, of their respective counties, on the first Monday of each month. At the meetings for the transaction of business under the revenue law they may continue in session as long as business may require; but at other regular meetings, they may sit for a period not longer than six days." Code of 1906, § 296.

2

The act approved March 1, 1875 (Laws 1875, p. 11), abated all taxes accrued prior to 1874 on lands foreited to or purchased by the State for taxes. It declared them liable for the taxes of 1874 alone, and provided a scheme, complete in itself, for the sale on the second Monday of May, 1875, of lands so held and on which the taxes of 1874 should still remain unpaid.

The Abatement Act does not authorize a sale of lands held by the State on which the taxes for all years previous to 1874 had been paid; it only applies to lands delinquent for taxes prior to 1874. Gamble v. Witty, 55 Miss. 26.

And to establish title to land sold under the said act, it is necessary to show that the land was delinquent for taxes for a year prior to 1874, and held by the State by purchase for such delinquency. Chambers v. Myrick, 61 Miss. 459; Chamberlain v. Lawrence County, 71 Miss. 949; 15 So. 40.

Proof that the land was in 1873 assessed to the State does not show that it was "held or claimed by the State under a sale of taxes prior to the year 1874," so as to bring it within the class of lands authorized by the Abatement Act to be sold May 10, 1875. If the sale to the State was made prior to the Code of 1871, it could only be proved by the deed of the collector; if subsequently, then by the lists of land sold. Dingey v. Paxton, 60 Miss. 1038.

Accordingly, while the certified list of lands sold to the State and reciting that it is a list of lands sold pursuant to the provisions of the Abatement Act, is *prima facie* evidence of the validity of the assessment and sale, it does not import anything as to the particular lands intended to be dealt with by said act. Chambers v. Myrick, 61 Miss. 459.

Only such lands were embraced by the Abatement Act of 1875 as were

distant day, say September, to allow exceptions and then hear them on the day fixed, and then proceed to receive and approve, and that is exactly what was done in this case. So much for this objection. This then I think settles the legality of the assessment roll in this case, and shows proper approval by the board. If the approval was regular then the power of *sale* was given to the sheriff and his sale was properly made on the 1st day of February, 1875.   *   *   *

The board of supervisors met the first Monday in July, the 6th, as the law directs, and without levying the taxes for the county, adjourned until July 13, 1874, and it is urged that for this reason the power of the board had ceased at the time the levy was made. This objection involves a question which I do not see has been before this court directly, nor do I believe any discussion has been

---

delinquent for State taxes as well as county taxes for years previous to the year 1874. Prophet *v.* Lundy, 63 Miss. 603.

Where one owned and resided upon a tract of land lying partly in Holmes county and partly in Carroll county, it was all, under article 14, p. 74, Code 1857, assessable in Carroll county, and, if there assessed and paid on for the year 1867, an assessment that year in Holmes county of the part there situated was illegal, and a sale thereunder to the State passed no title; and if the taxes for the years 1867 to 1873, inclusive, were paid in Carroll county, this fact and the 'fact that it was carried thereafter on the auditor's list of State lands would not make it subject to sale under the Abatement Act. This act applies only to land delinquent for State taxes prior to 1874, and as State taxes were regularly paid up to 1874 in Carroll county, and received by the State, neither the delinquency for 1874 for previous delinquency for taxes to Holmes county would make the land subject to the provisions of the Abatement Act. Prophet *v.* Lundy, 63 Miss. 603.

Land sold to the State in 1867, although under irregular proceedings, and held by the State until March 1, 1875, became subject to the provisions of the Abatement Act of that date, and payment under it of the State, county and levee taxes for the year 1874, by anyone interested, operated to revest title in the former owner of the land. Sigman *v.* Lundy, 66 Miss. 522; 6 So. 245.

Hence, where land was sold under the act to the State, and subsequently the owner or one interested furnished the proof required by section 574, Code 1880, that the taxes for 1874 were paid before the sale, and obtained the auditor's release of the title as provided, the release not only voids the sale under the said' act, but operates as a surrender to the former owner of the State's title acquired under any former sale. Sigman *v.* Lundy, 66 Miss. 522; 6 So. 245.

The mere enactment of the Abatement Act did not divest the title of the State or levee board, or revest title in a delinquent owner of lands embraced by it. No benefits could accrue to him under it except by compliance with its

made upon it. I will, therefore, give my own views upon the subject, and I believe I can show that principle supports it, as also does the decision of this court in the case of Wolfe *v.* Murry.

Section 1372 of the Code of 1871 requires the board to meet on the first Monday of July of each and every year for the purpose of fixing the amount of county taxes for the current fiscal year, etc. This section does not authorize the court to adjourn from day to day or from week to week, does not require the taxes to be *fixed* on that day. This being so, I ask what length of time may the board remain in session? The statute only requires them to meet on that day—not to act on that day. Then I take it the board would have a whole month to act in if in its discretion they should believe it necessary to consume so much time. Then if the time necessary is a matter of discretion with the Board, they

---

terms, and land subject to be sold under it, but not sold continued to be held as before, unaffected by the act. Paxton *v.* Valley Land Co., 68 Miss. 739; 10 So. 77.

The validity of sales under the act is not dependent upon the regularity of the last assessment or of the levy for the year 1874. The act adopted the assessments in the various counties, and the levy of taxes as then fixed as establishing the valuation of land and the rate of taxation, and had the effect to cure all irregularities or defects in such assessment arising from the non-performance or irregular performance of any act which the Legislature might constitutionally dispense with. Cochran *v.* Baker, 60 Miss. 282.

Hence, the fact that the levy in case of the original sale was excessive, or was made at the wrong place, does not affect the title to land sold under the Abatement Act. Chambers *v.* Myrick, 61 Miss. 459.

The act cured irregularities arising from the non-performance or irregular performance of any act which the Legislature might constitutionally dispense with beforehand, and since no constitutional provision connects the board of supervisors with the assessment of property for taxation, or the collection of taxes, land held by the State, under a tax sale made in 1871, and defective because of failure of the board to meet at the time and place required by law to receive the roll and hear objections, the owner having failed to make any objection to the assessment, as required by section 1684, Code 1871, was properly sold under the Abatement Act, which cured such defect, and in this respect the act is constitutional. Cato *v.* Gordon, 62 Miss. 373.

If the owner of land previously sold to the State, and embraced within the provisions of the Abatement Act of 1875, neither paid the taxes nor questioned the State's claim to sell for taxes, but remained silent, it is too late, after the sale under that act, to question the regularity or legality of the prior proceedings. The title thereafter depended alone upon conformity with that act. Cato *v.* Gordon, 62 Miss. 373.

alone can determine for themselves how the discretion shall be exercised as to time and its distribution. This meeting of the board is strictly a special term, and one duty only is required of it. The language is "the board of supervisors shall meet on the first Monday"—not that they shall at its regular term on the first Monday, "fix," etc.

Then if a special term, and no limited term is imposed as to length or time of adjournment or adjournments, the board would have to determine that for themselves. Then if it could adjourn, under the language used, for one day, why not for five days? I could present this court with many examples which would require it to be adjourned for several days.

This view is strongly supported by the fact that all other meetings of the board of supervisors for any purpose whatever has a limitation to the term, fixed by the statute, and this court in the case of Wolf v. Murphy, say that although six days is the limitation fixed by statute for the August term to consider objections to the assessment roll, and to receive and approve the same, yet if it became necessary, the board may adjourn to a distant day to complete their work. They assume there was an uncertainty as to the true object of the Legislature, and that that uncertainty warranted the interpretation and construction by the board of supervisors, and that their decision was binding upon others, although their decision and action under it might subject them to prosecution. That the law was directory and not absolute, and that this uncertainty differed in the case before this court from the cases of James v. Buford, 26 Miss. 194; Gamble v. Witty, 55 Miss.; Johnson v. Field, 57 Miss. 73.

The court say: "A construction producing a result so mischievous cannot be adopted. The act must be held to be *directory*, and though binding upon the members of the board, rendering them liable to prosecution for its wilful disregard, as not making void the session of the board, though they are not held in conformity with its requirements." Now the statute requiring this meeting in July to fix the taxes, only fixes the time and place, but leaves the whole question of duration and manner of proceedings undefined. The court is then left with discretion, and if the discretion was doubtfully used, it would not affect the taxpayer so that he could complain—the law itself being regarded and treated

as directory, at least so far as the necessity for use of discretion of session and adjournment of session was concerned. The facts show that while the statute demanded that the board should, at its August meeting, finally dispose of all objections to the assessment roll and approve it, yet the board in that instance failed to do so, but adjourned to the first Monday of September, and then received and approved the same; yet this court said that while it was irregular, it was not void, and a taxpayer could not complain, especially if it was approved before collection began.

Now, who can complain of this levy? The board that made it convened at the right time and the right place, and the power to levy the tax became complete, and could it be suspended by an irregular adjournment during the term—I say during the term, because the statute fixed no limits and left that question to the board, and the board could have remained in session for a month.
\* \* \*

Brief of Martin & Bates:

The bill charges that the sales of the land in question on the 1st of February, 1875, and of the 10th of May, 1875, were both void, and vested no title in the State, and the auditor's deed to appellant was a nullity.

1. Because the sale of the 10th of May was void, there being no taxes due for any year prior to the fiscal year 1874. This sale, we submit to the court, is clearly void. The proof shows that there were no taxes due on the lands for any year prior to 1874.

2. It is further insisted that the sales of February 1, 1875, and of the 10th of May, 1875, are void, because the assessment rolls upon which they are found were not filed with or delivered to the clerk of the board of supervisors within the time prescribed by law, supported by affidavit and certificate of the assessor.

It is admitted that the certificate of the assessor, Whiffin, as found, is substantially correct, but it is insisted that the assessment is void because not certified, sworn to, filed or delivered to the clerk of the board of supervisors on or before the first Monday of July, 1871. The evidence shows certificates made by assessor, August 8, 1871, and sworn to same day, and no proof is found to identify the assessment roll as having ever been filed by the clerk of the board of supervisors, or as part of the records of his

office. Code 1871, § 1684; Stovall v. Conner, 58 Miss. 138; Virden v. Bowers, 55 Miss. 18.

It is again insisted that the sale to the State is void because the assessment roll was not received or the judgment of approval made by the board of supervisors at a meeting held on the first Monday of August, 1871, or after notice of the meeting of said court that on a certain day it would meet to hear objections and to equalize the assessment of the lands for that year, and to examine and receive the same. But the evidence shows that the court met, viewed and approved the assessment roll at an adjourned meeting to the first Monday of September, 1871. We submit that this meeting was wholly unauthorized by law. The regular meetings provided by law being on the first Mondays of January, March, July and October, Code 1871, section 1353. The board, at the July meeting, under the provisions of section 1372 of this Code, is charged with the duty of fixing the county taxes, and at the August meeting to equalize the assessments, Code 1871, section 1685. The evidence further shows that the certificate and affidavit of the assessor was made to his roll on Tuesday, the 8th of August, when, instead, it should have been filed and certified to on the first Monday of July. Also an order was made that the roll remain on file until the first Monday of September. And further, that the board adjourned from the 10th of August to the first Monday of September, without authority of law, and at this adjourned meeting made an order accepting and approving the assessment roll. Code 1871, § 1685; Virden v. Bowers, 55 Miss. 1-20; Stovall v. Conner, 58 Miss. 138.

Another reason we would urge against the validity of the title appellant claims to have acquired from the State under his purchase is, that the taxes levied on the lands by the board of supervisors for the year 1874 was not made within the time or in the manner provided by law. The proof shows a regular meeting of the board of supervisors on Monday, July 6, 1874, and an adjournment of the board from the 7th to Monday, the 13th of July, when the levy of the taxes for which the lands were sold was made. Hence we reach the conclusion that no title in the lands passed to the State, under either the sales of February 1 or May 10, 1875. Code 1871, § 1372; Harris v. Stocket, 58 Miss. 826; Gamble v. Witty, 55 Miss. 34; Smith v. Neilson, 57 Miss. 139.

OPINION.—CAMPBELL, C. J.:

The levy of the county taxes on July 13, 1874, at an adjourned meeting, was fatal to the claim of title by virtue of the sale for taxes, on the 1st of February, 1875, and the land not having been shown to be of the class of lands to be dealt with under the "Abatement Act" of 1875, the sale on the 10th of May, 1875, conferred no title.

*Affirmed.*